UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>– against –<br><br>JANE DOE,<br><br>                       Defendant. | **Statement of Reasons Pursuant to 18 U.S.C. § 3553(c)(2)**<br><br>15-CR-195 |

**Parties:**

For United States

For Defendant

**Appearances:**

Hiral Mehta
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201
718-254-6418

Donna R. Newman
Law Offices of Donna R. Newman
20 Vesey Street, Suite 400
New York, NY 10007
212-229-1516



**JACK B. WEINSTEIN, Senior United States District Judge:**

<u>**Table of Contents**</u>

I.    Introduction .................................................................................................................. 1
II.   Instant Offenses ........................................................................................................... 2
III.  Guilty Plea .................................................................................................................... 2
IV.   Sentencing Hearing ..................................................................................................... 2
V.    Offense Level, Criminal History Category, and Guidelines Range ....................... 3
VI.   Law ................................................................................................................................ 3
VII.  18 U.S.C. § 3553(a) Considerations ........................................................................... 4
VIII. Sentence ........................................................................................................................ 8
IX.   Conclusion .................................................................................................................... 9

### I.  Introduction

Jane Doe ("Doe" or "the defendant") came to the United States as a young child. A citizen of Belize, she overstayed her tourist visa and is undocumented.

When she was 12 years old, she met John Roe ("Roe"), a man ten years her senior, who repeatedly raped her and directed her rape by others. He beat her and coerced her, grooming her into a life of prostitution and pimping. He forced her to assist him in recruiting girls as young as 12 years old for his prostitution ring.

In 2015, Doe pled guilty to sex trafficking conspiracy and sex trafficking of a child. Four years later, she is a full-time parent to her two young children. She now volunteers. She assisted the government as it pursued charges related to the criminal sex scheme.

Doe is sentenced to time-served—11 months' incarceration—and three years' supervised release. Roe received a 15-year sentence of incarceration and ten years of supervised release.

## II. Instant Offenses

In 2010, Roe began running a prostitution ring. Presentence Investigation Report ("PSR") ¶ 8. He recruited young girls and women to engage in sex acts in exchange for money, on individual "dates" and at parties. PSR ¶¶ 8–9. The prostitution service was advertised online; customers included his friends and co-workers, as well as strangers. PSR ¶ 8.

Roe was assisted in his scheme by Doe and another young woman. PSR ¶ 5. At the direction of Roe and the defendant, this other young woman recruited girls and women through Facebook for sex dates and sex parties. PSR ¶¶ 5, 13. The parties were attended by professional men; women and young girls would be compensated for their participation. PSR ¶¶ 13, 24. Photographs of recruits were sent to Roe and Doe, who determined whether the females depicted were appropriate. PSR ¶¶ 15–17. Doe also organized sex dates at Roe's behest. Doe fielded calls from clients, selected girls and women for particular dates, brought girls and women to clients, and advised on pricing. PSR ¶¶ 27, 36.

Nine victims have been identified. *See* PSR ¶¶ 22–46. They were pressured for paid sex acts by Doe and Roe. *See* PSR ¶¶ 9, 22, 28–29, 35–36, 39. The defendant, Jane Doe, was arrested in November 2014 following an extensive investigation. PSR ¶ 47.

## III. Guilty Plea

Jane Doe pled guilty in May 2015 to two counts: (1) sex trafficking conspiracy involving minor children, in violation of 18 U.S.C. §§ 1594(c), 1591(a)(1), 1591(a)(2); and (2) sex trafficking of a minor child, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(a)(2). PSR ¶¶ 1–3.

## IV. Sentencing Hearing

An extensive sentencing hearing was conducted on May 14, 2019. The defendant waived her opportunity to speak, but a letter she wrote explaining her background was accepted in evidence.

2

The proceedings were recorded on video to develop a record of body language and the atmosphere in the courtroom. *See* 18 U.S.C. § 3553(a); *In re Sentencing*, 219 F.R.D. 262, 264 (E.D.N.Y. 2004) ("A[n appellate court's] *de novo* review would be factually deficient without a video record of the district court's sentencing hearing.").

## V. Offense Level, Criminal History Category, and Guidelines Range

The government and the defendant agree that the offense level is 33. The base level offense is 30. Six points are added for use of a computer to solicit a person to engage in prohibited sexual conduct with a minor and because there were multiple victims. Three points are deducted for acceptance of responsibility and timely notice of intent to enter a guilty plea.

The defendant has no criminal history, which puts her in a criminal history category of I. PSR ¶ 186. The guideline imprisonment range is 135 to 168 months. Count One carries no mandatory term of incarceration, but Count Two carries a mandatory minimum sentence of ten years' incarceration.

## VI. Law

The sentencing court shall "state in open court the reasons for its imposition of the particular sentence" and, if the court has departed from the range suggested by the United States Sentencing Guidelines (the "Guidelines"), shall state why. *See* 18 U.S.C. § 3553(c).

The Guidelines are advisory, and departure from the proposed range is permissible when the district court, upon "its own independent review of the sentencing factors, aided by the arguments of the prosecution and defense," concludes that the reasons for departure are compelling. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). The district court must "consider all of the § 3553(a) factors to determine whether they support the sentence requested." *Gall v. United States*, 552 U.S. 38, 49–50 (2007). Among other factors, the court

should weigh "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

When a mandatory minimum sentence of incarceration is applicable, the district court may sentence a defendant below the floor upon the government's motion stating that the defendant has provided "substantial assistance" in an investigation or prosecution of another person (a "5K1.1 letter"). 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1. In fashioning a sentence, the district court must consider the Section 3553(a) factors in addition to the issuance of 5K1.1 letter and other usual issues in sentencing. *United States v. Woltman*, 610 F.3d 37, 40 (2d Cir. 2010).

### VII. 18 U.S.C. § 3553(a) Considerations

Doe was born in Belize; she is in her late 20s. PSR ¶ 191. Her father was physically abusive when she was a child. Add. Presentence Report ("Add. PSR") 1. He beat her mother with "regularity," which Doe observed. PSR ¶ 192. She herself was sexually abused as a young child by a relative. Add. PSR at 1. In 2002, the defendant moved to Brooklyn with her mother, joining her father. PSR ¶ 194. She has remained undocumented, but she has a visa application pending. PSR ¶ 195. Her mother and father are also undocumented immigrants. PSR ¶ 194. Doe struggled to adjust to city life in Brooklyn. PSR ¶ 197.

In addition to being a survivor of childhood sexual abuse, Doe is a survivor of severe physical and emotional abuse at the hands of Roe, her "boyfriend" since her early teenage years. PSR ¶¶ 198, 203. The abuse she suffered is a significant factor in understanding her criminal conduct. Cathy Spatz Widom, Nat'l. Inst. of Just., *Victims of Childhood Sexual Abuse–Later Criminal Consequences* 4 (Mar. 1995) ("In general, people who experience *any* type of maltreatment during childhood—whether sexual abuse, physical abuse, or neglect—are more likely than people who were not maltreated to be arrested later in life."); Cathy S. Widom & Michael G. Maxfield, Nat'l Inst. of Just., *An Update on the "Cycle of Violence"* 4 (Feb. 2001)

4

("Compared with controls, abused and neglected females were at increased risk of arrest for a violent crime as a juvenile or adult, despite the fact that females are less likely to be arrested for violence.").

Doe's association with Roe started soon after she arrived in the United States, at age 12. PSR ¶ 198. She met him at church and was flattered to receive his attention. *Id.*; Def. Sent. Mem. 4, May 1, 2019. He was 22 years old. PSR ¶ 198. When she was 13, he violently raped her while his friend watched. *Id.*; Add. PSR at 1. Roe threatened that if Doe reported the rape to the police, he would contact the authorities about her family's immigration status. Def. Sent. Mem. at 4. Their relationship was off and on for a time after that, but they later reunited. PSR ¶ 198. Sometime after he raped her, Roe forced Doe to engage in sexual activity with his boss and his brothers, in addition to himself. *Id.*

As is typical of young girls who suffer sexual abuse, Doe ran away from home to live with Roe. PSR ¶ 199; *see* Cathy Spatz Widom, *Long-Term Impact of Childhood Abuse and Neglect on Crime and Violence*, 24 Clinical Psychol. Sci. & Prac. 186, 189 (2017) ("Antisocial behavior is viewed as a survival strategy used by girls . . . . Studies have reported an association between physical and sexual abuse and female antisocial behavior and delinquency.").

Roe convinced Doe's parents not to take any action against him, threatening to call immigration authorities and physically threatening Doe's father. PSR ¶ 199. The family's attempts to convince Doe to return home were unsuccessful. *Id.* Soon after, she dropped out of high school three months prior to graduation. PSR ¶ 216. Her isolation, without support from her family, other adults, or peers, deprived her of the ability to build the resilience that would have protected her from Roe's further abuse and coercion and her own risk of offending as an

adult. *See* Widom, *Long-Term Impact of Childhood Abuse and Neglect on Crime and Violence*, *supra*, at 193.

While Doe lived with Roe, his conduct was consistent with the tactics of intimidation and coercion used to ensure that unwilling female sex traffickers undertake illegal conduct at the bidding of romantic partners, and cling to those relationships. *See* Julia Kienast et al., *The Role of Female Offenders in Sex Trafficking Organizations* 8 (Dec. 20, 2014) ("Many [women] undertake illegitimate tasks unwillingly under the overwhelming physical, emotional or economical influence or dependency on their male partners, eventually however becoming themselves interested on [sic] perpetuating the crime.").

Roe routinely physically abused Doe. He punched her face and head with a closed fist, causing black eyes and injured lips. PSR ¶ 201. He slammed her head into a wall, which caused hearing loss and blurry vision for several days. *Id.* When the defendant became pregnant at age 16 because of forced intercourse, Roe compelled her to have an abortion. Def. Sent. Mem. at 4. The abuse did not stop even when she was pregnant. During another pregnancy, he kicked her in the stomach, after which the baby was delivered stillborn. PSR ¶ 201; Def. Sent. Mem. at 4. When Doe dropped out of high school, it was because she did not want to explain the bruises on her body. PSR Add. at 2. She also lied to the medical staff at her prenatal clinic about the source of bruises and injuries on her body. PSR ¶ 201.

Roe ensured that the defendant was economically dependent on him. He compelled her to work as a prostitute, including during her pregnancies. PSR ¶ 202. Sex work is hazardous and abusive; she was raped by her driver and clients, and was robbed at gunpoint. *Id.* Doe believes that she was the primary breadwinner of everyone in Roe's household while she lived there, since Roe rarely worked and he confiscated all of her earnings. PSR ¶¶ 200, 202.

Roe further isolated Doe once she lived with him. Her family rarely saw her between the ages of 17 and 23, and during their visits Roe was always present. PSR ¶ 200. When Doe's family members called her on the phone, it precipitated arguments and led to more beatings, making her fear for her safety and forcing her to reduce contact with her family. *Id.* Roe also used his own family members to control Doe. His two brothers watched him rape her, and he ordered his sister to take her to an interview for a prostitution service so that she could make more money for him. PSR ¶¶ 198, 202.

As a result of Roe's abusive treatment, the defendant still suffers from multiple physical and emotional wounds. The trauma to her head is believed to have caused her seizure disorder. Def. Sent. Mem. at 5. Although now receiving treatment by a neurologist and medication, over the course of 2015 and 2016, she experienced a seizure each month. *Id.* Her retinas were detached because of Roe's beatings; she had to undergo procedures to repair her eyes. *Id.* at 6. Doe has severe headaches and memory loss. *Id.* She is receiving treatment for sexually transmitted infections. *Id.* She has been diagnosed with adjustment disorders, with Mixed Disturbance of Emotions and Conduct, anxiety, and depression. *Id.* She suffers from insomnia and nightmares. *Id.* She receives regular care from a psychiatrist and attends group counseling. *Id.*

Because of the instant offenses, Doe lost custody of her young children. PSR ¶ 203; Add. PSR at 2. But, she has regained that custody. Def. Sent. Mem. at 4. She takes the children to and from school, prepares dinner for them, and helps them with their homework. *Id.* at 6–7. Doe also volunteers at the school of one of her children. *Id.* at 7. She is a teacher's assistant and chair of the parent association. *Id.* She has been offered a full-time job at the school, but is unable to take it because she lacks work authorization in the United States. *Id.* at 8.

## VIII. Sentence

The elements of Guideline § 5K1.1 are satisfied, so the statutory minimum term of incarceration for sex trafficking of a minor does not apply.

The defendant was incarcerated for 11 months following her arrest. No further term of incarceration is imposed. Doe is also sentenced to three years' supervised release, subject to strict supervisory conditions. If she continues to do well, she may move for early termination of supervision as permitted by statute. *See* 18 U.S.C. § 3583(e)(1) ("[t]he court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)[,] . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice").

Doe participated in this criminal sex trafficking scheme under extreme duress. Although she took on a managerial role, she was forced by Roe to do so. The conduct she undertook was a survival strategy rather than a way for Doe to make a profit for herself. She was never permitted to keep any of the proceeds. Doe's work in the organization is typical of female sex traffickers who are also victims themselves. Working as a recruiter for the enterprise is considered preferable to working as a prostitute alone and is a mode of survival when there are no other exit options. Kienast et al., *supra*, at 8. Doe's recruitment and direction of others to recruit minors to act as prostitutes was comparatively less risky and burdensome than working as a prostitute herself.

Doe's sexually abusive behavior toward other victims also reflect her adolescent traumatic sexual experiences that normalize and juxtapose sex and violence. *See* L.C. Miccio-

8

Fonseca, *Family Lovemap, Intimacies, and Sexually Related Abuse Risk Variables*, 16 J. of Forensic Prac. 3, 11 (2014). Sexually victimized routinely from a young age, she was alone and isolated from family and peers. Her only significant intimate relationship—with Roe—was devoid of care and support. Her predatory and antisocial behaviors can also be traced to the chronic emotional neglect and intimacy deficit in her early sexual relationships, another risk factor for sexually abusive youths like Doe because it robbed her of the ability to empathize and emotionally connect with other victims. *See* L.C. Miccio-Fonseca, *Juvenile Female Sex Offenders*, 35 Aggression & Violent Behav. 26, 30 (2017).

Doe is receiving regular treatment for her physical and emotional conditions and appears to be making progress. Remorseful of her part in past criminal conduct, the defendant also cooperated with the government and helped to convict the main perpetrator of these crimes—Roe. She will likely be able to rehabilitate and continue to parent her children.

General and specific deterrence are achieved by the sentence imposed. She served a term of incarceration and will suffer the collateral consequences of her crimes, including registry as a sex offender.

No fine is imposed because the defendant does not have assets to pay one. A $200 special assessment is required. Restitution to victims of the criminal scheme will be governed by a separately imposed order.

### IX. Conclusion

All relevant issues have been considered to ensure a "sufficient, but not greater than necessary" sentence.

The wide disparity between Roe (15 years' incarceration) and Doe (11 months when she was bailed) is justified in protecting children from organized sex offenses. These sentences do

not alone, however, deter those using the sexual services of children. Relevant laws should be enforced against such individuals and they should not escape the punishment which deters.

This memorandum and order shall be filed and docketed unsealed. All other papers in the case are sealed.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: July 2, 2019
Brooklyn, New York